UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JHANDY GARCIA VELAZQUEZ,

       Petitioner,

    v.                               Case No.:  2:26-cv-01513-SPC-NPM

FACILITY ADMINISTRATOR,
FLORIDA SOFT-SIDED FACILITY
*et al.*,

       Respondents,

/

## <u>OPINION AND ORDER</u>

Before the Court are petitioner Jhandy Garcia Velazquez's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 8), and Garcia Velazquez's reply (Doc. 10).

Garcia Velazquez is a native of Cuba who was admitted into the United States as a lawful permanent resident on December 20, 2003.  In 2015, Garcia Velazquez was convicted of attempted trafficking in marijuana and illegally maintaining a vehicle or dwelling place.  On January 20, 2016, an immigration judge ordered Garcia Velazquez removed to Cuba.  Immigration and Customs Enforcement ("ICE") released him under an order of supervision on April 20, 2016.  Garcia Velazquez has been convicted of several misdemeanors since his release, including driving without a license, battery, and violating conditions of pretrial release.  On November 25, 2025, local law enforcement arrested

Garcia Velazquez for driving without a license.  ICE issued an immigration detainer and took custody of Garcia Velazquez the next day.  On April 10, 2026, ICE took Garcia Velazquez to the U.S.-Mexico border and told him to depart the bus and cross the border.  Garcia Velazquez stayed on the bus, and ICE returned him to Alligator Alcatraz.

Garcia Velazquez constructively filed his habeas petition on April 27, 2026, and the Court received it and opened this case on May 5, 2026.  In the petition, Garcia Velazquez claims his detention violates his due-process rights because it is prolonged and unreasonable, and because the government did not provide an explanation for his detention or an opportunity to contest it.  On May 12, 2026, ICE notified Garcia Velazquez it revoked his release under 8 C.F.R. § 241.4 because his domestic violence conviction violated the conditions of supervision.  The government responded to Garcia Velazquez's petition on May 14, 2026.  It defends detention under the *Zadvydas* framework, but it does not claim ICE afforded Garcia Velazquez due process when it arrested and detained him.

Garcia Velazquez's detention is unlawful for two reasons.  First, ICE arrested and detained him without due process.  The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The clause "applies to all 'persons' within the United States, including aliens, whether their presence

here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Garcia Velazquez's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. The government's actions gave Garcia Velazquez no opportunity to contest the reasonableness of his detention. ICE did not give Garcia Velazquez notice of the reason for his detention or an opportunity to address it until after he sought habeas relief.

What is more, the Court recognizes significant value in the safeguards established by 8 C.F.R. § 241.4(l), the regulation ICE used as a post hoc justification for arrest and detention. Those safeguards include contemporaneous notice of the reason for revocation and a prompt informal interview to address the reason. Neither occurred here. Without notice and an interview, there is nothing to ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress. Third, while the government has a legitimate interest in executing removal orders and enforcing conditions of release, ICE does not show how timely compliance with § 241.4(l)'s notice and interview procedures would have burdened those interests.

Garcia Velazquez's detention is also unlawful under the *Zadvydas* framework. "Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention

unreasonable and no longer authorized by statute." 533 U.S. 678, 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id*. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id*. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id*.

The government argues Garcia Velazquez's petition is premature because his current detention has not exceeded 180 days. They assume a six-month presumptively reasonable period of detention starts each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention

pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Garcia Velazquez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE was unable to remove him to Cuba in 2016, and there is no indication Ciba is likely to accept him now.

The burden thus shifts to the government. ICE points to its April 2026 attempt to send Garcia Velazquez to Mexico. But the evidence before the Court suggests that was an informal effort to compel voluntary departure, not an above-board removal attempt that complied with statutory and constitutional requirements. *See Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."); *see also D.V.D. v. U.S. Dep't of Homeland Security*, --- F. Supp. 3d ---, 2026 WL 521557 (D. Mass. Feb. 25, 2026) (setting aside DHS's current third-country removal policy because it violates noncitizens' right to seek fear-based relief

under the Convention Against Torture). ICE makes no attempt to show it can lawfully remove Garcia Velazquez in the reasonably foreseeable future.

The Court finds no significant likelihood Garcia Velazquez will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, ICE can detain Garcia Velazquez to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680. If ICE re-detains Garcia Velazquez, it must afford him the process due by following the applicable regulation.

Accordingly, it is hereby **ORDERED:**

Jhandy Garcia Velazquez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Garcia Velazquez within 24 hours of this Order and give him telephone access so he can arrange transportation from the facility.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 21, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record